CITY OF ZANESVILLE, APPELLEE, *v.* THE OHIO FUEL GAS CO., APPELLANT.

(Decided April 3, 1940.)

*Mr. John P. Baker,* city solicitor, and *Mr. Clarence J. Crossland,* for appellee.

*Messrs. Eagleson & Laylin, Mr. Robert E. Scott* and *Messrs. Pugh, Knapp & Miller,* for appellant.

MONTGOMERY, J. Many years ago The Ohio Fuel Gas Company, or its predecessor in title, obtained from the

city of Zanesville a franchise for the furnishing of natural gas, authorizing the use of its streets and alleys prescribed in the terms and conditions for such franchise grant. That grant, by its terms, expired in 1923. From that date until March 1938, the defendant company operated in the city of Zanesville by virtue of rate ordinances duly passed by the council of that city and accepted by the gas company. As a part of the accepted rate ordinances, free gas was furnished by the company to the city of Zanesville for various and sundry of its listed municipal buildings.

The rate ordinance then in effect having terminated by lapse of time, the council of the city of Zanesville did, on March 11, 1938, pass ordinance No. 2973, which ordinance was duly approved by the mayor, advertised as required by statute and became effective, according to the petition on file in this action, on April 11, 1938. This ordinance No. 2973 was in terms similar to the rate ordinance theretofore in effect, except that it changed materially the rates to be charged for gas consumed.

Section 2 of this ordinance was in the following language:

"Provided, however, that said, The Ohio Fuel Gas Company shall furnish to the city of Zanesville the same fires free of charge as were furnished to the city of Zanesville as of March 1, 1938, and in addition to furnish gas for heating plant of the municipal building on Market street, commonly called the city hall and market house building."

The Ohio Fuel Gas Company did not accept this ordinance, nor did it file complaint with the Public Utilities Commission of Ohio as authorized by Section 614-44 *et seq.*, General Code. It assumed to treat this ordinance as invalid and to proceed under the terms and conditions of the ordinance theretofore in effect. Thereupon the case of *Maxwell* v. *Ohio Fuel Gas Co.*, 61 Ohio App., 394, 22 N. E. (2d), 639, was instituted

in the Court of Common Pleas of Muskingum county and thereafter appealed to this court, being case No. 581 in this court. By virtue of the opinion rendered by this court on December 30, 1938, the gas company was held entitled to collect from the consumers of gas in Zanesville such rates as were provided by this ordinance No. 2973 for a period of five years from the date thereof, unless the ordinance be amended or repealed, or a new contract agreed upon, or modified by the Public Utilities Commission, if it possesses that power.

The Supreme Court refused to review the holding of this court in that action and so far as that phase of the ordinance is concerned it was by this *Maxwell case* determined.

The concluding paragraph of the opinion in the *Maxwell case, supra,* written by Judge Sherick, in which the other two members of this court concurred, is as follows:

"With respect to the furnishing of free fires to the city, in the absence of the city from this suit, this court can approve of no order in respect thereto. Plaintiff is not the city's agent. We know of no rule of law requiring the furnishing of free gas, consequently no order will be made."

We are now confronted squarely with the effect of this quoted pronouncement in our former opinion. Subsequent to the termination of the *Maxwell case,* The Ohio Fuel Gas Company served notice upon the city of Zanesville that it would no longer furnish free fires as provided by the ordinance and threatened to shut off the same. As a result of such threat, this action was instituted in the Common Pleas Court seeking a mandatory injunction against the defendant requiring it to furnish these free fires. From the decision of the Court of Common Pleas an appeal was perfected to this court. It is to be observed that the city does not claim, apparently not desiring, the free fires in the municipal building and market house mentioned in the

ordinance, but seeks only the maintenance of the free fires called for by previous ordinances.

The pleadings in this case are rather voluminous and the briefs are exceedingly so, and unnecessarily so. There is as we view it but the one question before the court and that is as to whether, in view of the facts heretofore set forth, the city is entitled to require of the defendant gas company the keeping up of these free fires in these municipal buildings.

Under the original franchise grant its terms could have been enforced, being the conditions laid down for the granting of the use of the streets and alleys. In this instance the franchise grant had been terminated. The company was operating by virtue of rate ordinances. Under Section 504-2 *et seq.*, General Code, the company could not voluntarily have removed its pipe lines or service from the municipality, nor could the municipality arbitrarily order such removal. The only way in which such removal is authorized is by Section 504-3, General Code, and the power to determine it lies neither with the municipality, nor with the utility. For the original use of its streets certain concessions might well be demanded for the benefit of the city, itself. But that the city should order the tearing up of its own streets and the disconnecting of service to consumers, or that the utility should do either of these things, was very properly prohibited by statute, and the power, regulation and control was given to the Public Utilities Commission. The situation, therefore, is that this gas company, operating beyond the terms of its franchise grant, being bound to continue to furnish service, is controlled by statute in that it may contract with a municipality in the matter of rates and for other services, or that, upon a failure to accept a rate ordinance, it may apply to the Public Utilities Commission for revision.

It is to be noted that Section 614-44, General Code, provides for the lodging of a complaint with respect to

"the rate, price, charge, toll, or rental to be made, charged, demanded, collected, or exacted, for any commodity, utility or service by such public utility." In other words, an appeal may lie from the fixing of a rate. There is no appeal authorized from a provision ordering the furnishing of free gas to a municipality.

This ordinance No. 2973 does not fix a contractual relationship between the city and the company.

"In order that there should have been a valid contract between the parties, which renewed the franchise, it was necessary not only that there should be an ordinance duly passed and published in accordance with law, but that the company should accept its terms. (*East Ohio Gas Co.* v. *City of Akron,* 81 Ohio St., 33.) Until such acceptance, it lacked the essentials of a contract. It was a mere proposition." *Village of Oak Harbor* v. *Pub. Util. Comm.,* 99 Ohio St., 275, 124 N. E., 158.

In other words, there is no contractual obligation, but the gas company, by failure to comply with the statutory provisions providing for complaints, may be held, as we decided in the *Maxwell case,* to the rates prescribed by a rate-fixing ordinance, but, as we view it, to nothing more than that.

Attention is directed to the case of *United Fuel Gas Co.* v. *Pub. Util. Comm.,* 103 Ohio St., 168, 132 N. E., 845. This is a *per curiam* opinion and not very elaborate. The statement of facts in that case would show some similarity with the facts in the instant case, and it is apparent from a reading of this short opinion that among other provisions of the rate-fixing ordinance was one requiring the furnishing of free gas for municipal purposes, and the two provisions seem to have been joined together, as is the case in the ordinance now presented before us. The concluding paragraph in the opinion in 103 Ohio State, as it appears on page 171, is:

"The provision requiring the furnishing of gas free

for certain municipal purposes which is contained in the ordinance of November, 1919, was beyond the power of the council unless agreed to by the company.''

The decision in this case was later overruled in *United Fuel Gas Co.* v. *City of Ironton,* 107 Ohio State, 173, 140 N. E., 884, 29 A. L. R., 342, which involved the same situation, but the reversal was on the ground of want of power to enter into the contract and on the further ground that the company should have been permitted to plead the confiscatory nature of the rate sought to be imposed. The above quoted holding in 103 Ohio State, 171, was not disturbed. And, manifestly, if a rate might be confiscatory, the requirement that free gas be furnished is surely so. The city of Zanesville had the power to fix rates, but had not the power to confiscate the property of the gas company without compensation, when it failed to accept the ordinance.

As indicated in the opinion in the *Maxwell case, supra,* a definite pronouncement on this proposition would have been improper because the question was not presented to us, but our views were intimated, and upon a more careful consideration of the question, as it is now presented to us, it seems to us that the conclusion which we must reach is inevitable.

It follows that the judgment of the Common Pleas Court will be reversed and the petition of plaintiff may be dismissed.

*Judgment reversed.*

SHERICK, P. J., concurs.

LEMERT, J., dissents.